# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| AMANDA N. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:14-CV-326-TLS |
| | ) | |
| COVIDIEN, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Amanda N. Smith, underwent a surgical procedure in which absorbable sutures were used. After an undissolved suture was removed during a second surgery performed three months later, she sued Covidien, LLC, the manufacturer of such sutures. The Amended Complaint alleges that the Plaintiff's injury, pain and suffering, and subsequent remedial surgery, "were the direct and proximate result of a faulty product designed and manufactured by Covidien." (First Am. Compl. ¶ 9, ECF No. 21.)

The Defendant has moved for summary judgment [ECF No. 37], arguing that the Plaintiff does not have evidence to establish an essential element of her claim — specifically, that there is insufficient evidence that the suture used during the Plaintiff's surgery was manufactured by the Defendant. The Defendant claims that even if such evidence existed, there is no expert who can identify a defect with a Covidien suture or who can opine that any such defect caused the Plaintiff's damages. The Plaintiff counters that genuine issues of material fact exist on the issue of product identification. She relies on the theory of *res ipsa loquitur* to argue that a jury should determine whether the Defendant manufactured a product containing a defect. Moreover, the Plaintiff argues that the testimony of her treating physician creates genuine issues of material fact whether this defect caused her injuries.

For the reasons stated in this Opinion and Order, the Court GRANTS the Defendant's Motion for Summary Judgment.

## BACKGROUND

On December 28, 2013, David W. Stein, M.D., performed surgery on the Plaintiff to remove a mass located on the right side of her lower neck. One of the risks associated with the surgery was unintended injury to the spinal accessory nerve. During the procedure, Dr. Stein used a 3-0 Chromic Gut Surgical Suture to close deep, subcutaneous tissue. Following the procedure, the Plaintiff began to experience shoulder weakness and drooping.[1] On March 28, 2014, three months after her initial surgery, the Plaintiff underwent a second procedure to determine the cause of her shoulder symptoms. Dr. Susan Mackinnon performed the procedure. She removed a portion of a large absorbable suture that had "wrapped circumferentially about half to two-thirds around the nerve." (MacKinnon Aff. ¶ 2, ECF No. 38-5.) When Dr. Mackinnon removed the suture remnant, she did not send it to pathology for analysis because it was not relevant to her treatment of the Plaintiff at that time. Dr. Mackinnon does not know who manufactured the suture.

The Plaintiff has designated three non-retained experts for purposes of establishing liability and damages: Dr. David Stein, Dr. Susan Mackinnon, and Dr. Robert Thompson. Only Dr. Stein's testimony is pertinent to the issues before the Court on summary judgment. Dr. Stein is the only one of these three witnesses who provided deposition testimony. Additionally, the

---

[1] The Defendant cites to pages 25–26 of Dr. Stein's deposition in support of the assertion that the Plaintiff's symptoms developed a few days after the surgery. The Court could not find support for the Defendant's assertion on pages 25 and 26 of Dr. Stein's deposition. The Plaintiff's submissions do not indicate how long after the surgery her symptoms began to appear.

Plaintiff designated Dr. Stein's affidavit as an exhibit in opposition to summary judgment. The Plaintiff believes that Dr. Stein's testimony is relevant to the product identification and causation issues.

The other two doctors have provided two affidavits each. After the Defendant obtained the first affidavits, the Defendant filed a motion [ECF No. 40], asking the Court to enter an Order striking the Plaintiff's Expert Witness Disclosures related to product identification, product defect, and causation because the disclosures were inconsistent with the witness's affidavit testimony. Specifically, the witnesses had not provided any testimony that the Plaintiff's injuries were caused by the failure of a Covidien suture to dissolve. The Plaintiff then obtained a second affidavit from both Dr. Mackinnon and Dr. Thompson, in which the doctors clarified that they had no opinion either way as to whether the particular suture at issue in this case was defective (as opposed to stating that they did not believe the suture was defective). The Plaintiff also clarified that she was withdrawing any reliance on these experts as to the issue of product defect, electing to prove the same through the doctrine of *res ipsa loquitur* and the relevant product liability laws.

It is not necessary for the Court to strike the Plaintiff's expert witness disclosures. The Court will only rely on the actual, designated, testimony of the witnesses to resolve the summary judgment motion, *see* Fed. R. Civ. P. 56(c)(1), not on what the Plaintiff indicated in her Rule 26 disclosures that she expected the witnesses would establish through their testimony. Additionally, the Court will apply the appropriate standards regarding burdens of proof and the admissibility of testimony in the summary judgment context. In this case, that testimony largely comes from Dr. Stein's deposition and from his subsequent affidavit.

According to Dr. Stein's affidavit, the surgery he performed on the Plaintiff was relatively common, and there was nothing unusual about her condition. (Stein Aff. ¶ 4, ECF No. 45-1.) The surgery proceeded without incident, and Dr. Stein was "particularly careful to avoid contact with the spinal accessory nerve with either the suture or surgical instrument or any other foreign objects." (*Id.* ¶ 5.) Dr. Stein maintains that he has "a clear recollection of the fact" that "nothing came into contact with her spinal accessory nerve" either during the surgery or when he was closing the wound. (*Id.* ¶ 6.)[2] He would not have been trying to circumferentially wrap the suture around the spinal accessory nerve. (*Id.*) Also, "[t]he absorbable suture selected for this surgery was intentionally done so that the suture would be absorbed and thereby not contact nor harm the spinal accessory nerve." (*Id.* ¶ 7.)[3] Dr. Stein notes that the instructions accompanying the package of Covidien 3-0 Chromic sutures "gave no reason to expect the lack of total absorption nor the risk of failure of total absorption causing damage to the spinal auxiliary nerve" and that he has not known "for a Chromic suture not to absorb within the 90-day period." (*Id.* ¶ 9.)

---

[2] During Dr. Stein's deposition, he testified that he would have tried to avoid placing the suture near the spinal accessory nerve, but that he did not specifically recall how close he placed the suture to the nerve. (Stein Dep. 35–36, ECF No. 38-4.)

[3] Dr. Stein's statement that an absorbable suture was selected specifically so that it would be absorbed is not particularly controversial or even in dispute. However, on page nine in the analysis section of the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment [ECF No. 46], the Plaintiff argues that "Dr. Stein has testified that the Covidien suture was selected and used in surgery precisely due to its absorbable qualities." This is not an entirely accurate statement. Dr. Stein did not actually identify the manufacturer of the suture, but referred only to "[t]he absorbable suture selected for this surgery," without identifying a specific manufacturer. As other portions of his deposition testimony reveal, Dr. Stein did not know the manufacturer of the suture.

# ANALYSIS

## A.  Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the nonmoving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in that party's favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court should only deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767,

5

770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.     Indiana Products Liability Act**

Both parties acknowledge that the Plaintiff's claims are governed by the Indiana Products Liability Act (IPLA). *See Piltch v. Ford Motor Co.*, 778 F.3d 628, 632 (7th Cir. 2015) ("The IPLA governs all actions brought by a user or consumer against a manufacturer for physical harm caused by a product, regardless of the legal theory upon which the action is brought.") (citing Ind. Code § 34–20–1–1). A plaintiff suing under the IPLA must establish that "(1) he or she was harmed by a product; (2) the product was sold 'in a defective condition unreasonably dangerous to any user or consumer'; (3) the plaintiff was a foreseeable user or consumer; (4) the defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition it was sold." *Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 635 (7th Cir. 2006) (quoting Ind. Code § 34–20–2–1). In manufacturing defect cases, a plaintiff must also prove that her injuries were proximately caused by the defect. *Piltch*, 778 F.3d at 632 (citing *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007)). When an issue is not within the understanding of a lay person, expert testimony is required. *Id.*

**A.     Product Identification**

The Defendant argues that it is entitled to judgment as a matter of law because no healthcare provider or medical record indicates that its sutures were used during the Plaintiff's

6

December 28, 2013, surgery. The Plaintiff argues that the Defendant's contention is "contradicted by the factual record in this case." (Pl.'s Mem. of Law 8, ECF No. 46.) Upon review of the factual record, the Court agrees with the Defendant.

Dr. Stein testified that he did not know who manufactured the suture he used during the Plaintiff's surgery. (Stein Dep. 40 ("Q. How do you know who manufactured the suture used on Amanda Smith? A. I don't know. I don't know if they document or track the product supply and serial number or however they are coded."); *Id.* at 42–43 ("Q. When you were working on Ms. Smith, did you understand what company manufactured that chromic suture? A. No.").) In his subsequent affidavit, Dr. Stein indicated that he intentionally selected an absorbable suture, and noted that the instructions that accompany Covidien 3-0 Chromic sutures, a copy of which had been provided to the Plaintiff's lawyer, would give him no reason to expect the lack of total absorption. However, nowhere in his affidavit or during his deposition testimony, did Dr. Stein actually state that he was aware that Covidien manufactured the suture that he used during the Plaintiff's surgery. Nor does he set forth facts that would suggest he had such personal knowledge. According to Dr. Stein's deposition, the surgery record does not identify the brand of suture used. The Plaintiff has not presented any other medical record that identifies the manufacturer.

The Plaintiff maintains that, for the issue of product identification, the Court must also consider a letter that the Plaintiff's counsel received on August 1, 2014, in response to an inquiry regarding who manufactured the suture used in the Plaintiff's surgery. Although both parties acknowledge the existence of the letter, it is not a part of the summary judgment record before this Court. Moreover, the reliability of the information contained in the letter is far from

established. It can be gleaned from Dr. Stein's deposition that the letter contains his signature. However, as the Defendant points out, Dr. Stein testified during his deposition that he did not recall responding to the letter, and surmised that the letter would have been processed through to whoever was responsible for inventory management:

> Q. I know that plaintiff's counsel sent a letter to you at some point asking you to identify who made the suture; do you remember receiving that letter?
>
> A. I don't recall if it came to me. We process through to whoever does the inventory management.
>
> Q. Did you respond to that or did someone else in your office respond to that?
>
> A. I don't recall doing it, it likely would have been somebody else though.
>
> Q. Do you know who would have been the person that would have responded to that?
>
> A. No. I am sure we can figure it out, but I don't know who it is. [Plaintiff's counsel] might tell you.
>
> Q. I think you signed the letter, do you remember signing a letter?
>
> A. I don't recall that.
>
> Q. Okay. That's fair. Sitting here today you don't know if you responded or didn't respond; is that fair.
>
> A. Correct.

(Stein Dep. 41–42.) Dr. Stein was not in charge of his practice group's inventory management, and did not know who was.

The Court finds that this undeveloped record does not create a genuine issue of triable fact. Dr. Stein's affidavit refers to the Covidien instructions that were passed along to Plaintiff's counsel, but Dr. Stein does not say that his affidavit is intended to alter his deposition testimony where he unambiguously indicated that he had no knowledge of who manufactured the sutures

8

he used during the surgery. Even if the affidavit could be read to contain an implicit allegation that Covidien sutures were used, "at some point a party who discounts his knowledge of a certain subject cannot create a 'genuine' issue of fact by contradicting unequivocal testimony about the subject." *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1211 (7th Cir. 1993), overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013). Affidavit testimony is not admissible to create a genuine issue of material fact if it contradicts earlier deposition testimony. *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 952 (7th Cir. 2001) (excluding affidavit testimony as contradictory to deposition testimony). Contrary affidavit testimony should be disregarded "unless it is demonstrable that the statement in the deposition was mistaken." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006) (quoting *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532–33 (7th Cir. 1999)); *see also Beckel v. Wal-Mart Assocs. Inc.*, 301 F.3d 621, 623 (7th Cir. 2002) (holding that when an affidavit contradicts the affiant's deposition it is "entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy").

The Seventh Circuit has identified a number of scenarios that could plausibly explain a change in testimony, such as a confusing deposition question, circumstances indicating a lapse of memory, relevant new information discovered, or ambiguous or incomplete earlier testimony. *See Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007); *Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 614 (7th Cir. 2002) ("Courts generally ignore attempts to patch-up potentially damaging deposition testimony with a supplemental affidavit unless the party offers a suitable explanation—e.g., confusion, mistake or lapse in memory—for the discrepancy.") (quoting *Maldonado v. U.S. Bank*, 186 F.3d 759, 769 (7th Cir.

1999)). The Plaintiff does not explicitly state that any of these scenarios exists, and the Court's own consideration of such scenarios does not reveal a reason to doubt Dr. Stein's testimony that he has no knowledge of who manufactured the suture at issue. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the a witness has personal knowledge of the matter" about which he is testifying. Fed. R. Evid. 602. According to the evidence before the Court, Dr. Stein's personal knowledge does not include the brand of suture he used during the Plaintiff's surgery.

The Plaintiff's only other evidence regarding product identification, a letter that is purportedly a response from Dr. Stein, was not placed in the summary judgment record. Because both parties reference the letter, and it was discussed during Dr. Stein's deposition, the Court assumes that it exists. However, the Court has a difficult time concluding that the contents of the letter (which the Court has not actually seen) would be admissible. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (noting that the nonmoving party is not required to produce evidence in a form that would be admissible at trial, but can use any of the kinds of evidentiary materials listed in Rule 56(c)); *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267–68 (7th Cir. 1994) (acknowledging that "evidence of evidentiary quality" that is required to ward off summary judgment need not be in admissible form, but "must be admissible in *content*").

The person who responded to the inquiry has not been identified. Without sworn testimony from the person who made the statement that the Plaintiff is relying upon to prove the manufacturer's identity (or at least to show that there is an issue of fact regarding the same), the Plaintiff is left with hearsay. A party may not rely on inadmissible hearsay to avoid summary judgment, *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997), and the Plaintiff has not

identified any exception to the hearsay bar. There is no evidentiary value in an unidentified person using unexplained and unverified means to pinpoint the Defendant as the manufacturer of the suture. The letter does not create a triable issue of fact.

The favor that is extended toward the nonmoving party on summary judgment "does not extend to drawing inferences that are supported by only speculation or conjecture." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (first quoting *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013), then citing *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). The Plaintiff may have had good reason—the letter—to believe that Covidien was the manufacturer of the suture used in the Plaintiff's surgery. But, the Plaintiff had an obligation to gather and present some evidence that a jury could rely upon to make this finding. "When a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own." *Marion v. Radtke*, 641 F.3d 874, 876–77 (7th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

What is more, even assuming that reference to the letter was sufficient to create a genuine issue of material fact for trial, the Defendant would still be entitled to summary judgment based on the Plaintiff's insufficient proof that a manufacturing defect proximately caused the Plaintiff's injury.

**B.     Product Defect and Causation**

The Defendant asserts that no expert has testified regarding causation. In response, the Plaintiff states that Dr. Stein offered the necessary opinion during his deposition.

Damage to the spinal accessory nerve is one of the risks of the surgery that Dr. Stein

11

performed (Stein Dep. 29), but he attempted, as he always does, to avoid injury to the Plaintiff's spinal accessory nerve (*id.* at 34). Regarding whether he was successful, Dr. Stein testified:

> Q: Can you say as a matter of fact that you did not wrap the suture around the accessory nerve during the course of surgery?
>
> A. I certainly always make my best attempt not to, so it is hard to argue if a doctor found that's the case, that's where it was, but yeah, that's not what I intended to do.
>
> Q. So you don't know one way or the other if you specifically did that or not, and by that I mean wrapped the suture around the actual accessory nerve?
>
> A. Right.

(*Id.* at 62.) However, in his subsequent affidavit, Dr. Stein stated, it is "my clear recollection of fact, together with my training and experience, that nothing came into contact with her spinal accessory nerve during the surgery nor immediately thereafter when the surgical wound was closed." (Stein Aff. ¶ 6.)

When Dr. Stein was asked whether he knew if the suture caused the Plaintiff's injury to her spinal accessory nerve, he indicated that the suture would cause damage if it touched the nerve at any point. (Stein Dep. 52–53, 54.) He further testified:

> Q. And is it your opinion today that the suture, the contact with the suture and the spinal accessory nerve, that's what caused Ms. Smith's range of motion issues and problems with her neck and back?
>
> A. I wasn't at the surgery where they found the suture, but if that was indeed at the time they found it in contact with the nerve, I think that would have been the most logical conclusion.
>
> Q. The most logical conclusion that her—
>
> A. That the suture was — the suture or the suture placement was the cause of the injury to the nerve.

(*Id.* at 55.)

12

The Plaintiff argues that, because Dr. Stein expressly opined that the Plaintiff's injuries were caused by the suture, and not some other cause, the Court cannot grant summary judgment. The Plaintiff's argument does not fully account for the fact that a defect in the suture, not just the suture's contact with the nerve, must have been the proximate cause of her injuries. There is no expert testimony regarding when the suture likely first came into contact with the nerve. During his deposition, Dr. Stein admitted that the suture could have come in contact with the nerve on the day of surgery given that the Plaintiff had immediate symptoms. (Stein Dep. 56–57.) Additionally, Dr. Stein himself expressed that he would not have expected the suture to move from where he tied it. (*Id.* at 62.) There is no other opinion in the record regarding whether the suture could have migrated out of its original placement, or what might have caused such migration. These are matters that are outside the understanding of a lay person.

Additionally, it has only been implied in the record before the Court that, by the time of the Plaintiff's March 28 surgery, three months afer her initial surgery, the suture should have been completely absorbed if it had been manufactured without defect. As already indicated, because this is a manufacturing defect case, the Plaintiff must prove that her injuries were proximately caused by a defect. *Piltch*, 778 F.3d at 632 (citing *Rushford*, 868 N.E.2d at 810). A manufacturing defect exists when a product "deviates from its intended design." *Hathaway v. Cintas Corp. Servs., Inc.*, 903 F. Supp. 2d 669, 673–74 (N.D. Ind. 2012) (quotation marks omitted) (quoting *Westchester Fire Ins. Co. v. Am. Wood Fibers, Inc.*, No. 2:03–CV–178–TS, 2006 WL 3147710, at *5 (N.D. Ind. Oct. 31, 2006).

According to the Plaintiff, the "suture's deviation from its intended design i[s] obvious [because] the suture was designed to absorb, but failed to do so." (Pl.'s Mem. 8.) This is similar

13

to the argument the plaintiffs made in *Piltch v. Ford Motor Co,.* with respect to air bags that did not deploy during or after a single vehicle crash. The plaintiffs asserted that, even without expert testimony, the evidence raised a genuine issue of material fact as to defect. 778 F.3d at 633 ("The Piltches contend that the Mountaineer's owner's manual establishes the intended design of the air bags, and that the state of the air bags during and after the 2007 collision indicates a departure from that intended design."). The court rejected the plaintiff's theory because a "lay person would be unable to discern whether the circumstances of the crash should have triggered air bag deployment or not." *Id.* The plaintiffs had not preserved the vehicle or its blackbox, or presented the testimony of an accident reconstruction expert or otherwise skilled witness to fill in the blanks that would allow a lay person to make a determination whether the air bags were defective. *Id.* The court further found that the owner's manual did not move the case "out of the realm of speculation" because the conditions for air bag deployment were "written in broad generalities." *Id.* (the manual stated that the air bags were designed to activate when the vehicle sustained "sufficient longitudinal deceleration" but did not define sufficient nor specify precise speeds).

As was true in the *Piltch* case, here, the product itself has not been preserved or examined. Neither does the summary judgment record contain any instructions or manual from the Covidien product that would help a trier of fact determine how the suture was intended to perform.[4] While Dr. Stein stated that "[i]t is unknown in my experience for a Chromic suture not

---

[4] The Defendant represents that the Covidien Instructions for Use for 3-0 Chromic Gut sutures, which have not been submitted as evidence either in favor of or in opposition to the summary judgment motion, "do not state that the suture is designed or intended to be fully absorbed within ninety days of use." (Def. Reply 7 n.3, ECF No. 52.) The Defendant further states that "[t]he suture absorption time is variable, depending on the enzymes in each individual patient." (*Id.*) "Chromic Gut sutures cannot and should not absorb immediately. They must maintain strength to hold tissue together until the tissue has

to absorb within the 90-day period," he has not indicated what experience qualifies him to make this assessment. Dr. Stein's deposition expounds somewhat on what experience he may have: "Occasionally we have a re-exploration for various reasons . . . and come back 90 days later, and chromic suture usually will not be present at that time period, other types of sutures could be." (Stein Dep. 60.) Even if Dr. Stein's own experiences bore this out, his testimony was that he "occasionally" had an opportunity to view the area where the sutures had been placed, and they "usually" will not be present. Dr. Stein does not purport to address other factors that could impact absorption. He was not presented as an expert on dissolvable sutures. No other witness has offered any expert testimony on the intended design of Covidien sutures, or the myriad of factors that could impact the performance of its sutures.

"[I]n certain rare instances, circumstantial evidence may produce reasonable inferences upon which a jury may reasonably find that a defendant manufactured a product containing a defect." *Whitted v. Gen. Motors Corp.*, 58 F.3d 1200, 1208 (7th Cir. 1995). However, other probable explanations must be nullified before such an inference can reasonable be made. *Piltch*, 778 F.3d at 634; *Whitted*, 58 F.3d at 1208. Here, the Plaintiff has done little to invalidate other explanations for the suture being visibly wrapped around her spinal accessory nerve. Dr. Stein's Affidavit is an attempt to eliminate the possibility that the suture came in contact with the nerve at the time of surgery, but his deposition testimony left open the possibility that the suture did not migrate to the nerve, but started near it despite his best attempts. Additionally, a jury could only speculate, based on the current record, that the suture was defective.

---

healed. In sum, the time for absorption of a Chromic Gut suture is unique to each patient." (*Id.*)
    Although the Court cannot consider these statements as established facts—they are the argument of counsel—it is equally true that the Court does not have evidence that the suture was intended to be fully absorbed within ninety days regardless of other variables.

Without expert testimony, a jury would only be able to speculate as to the viability of the Plaintiff's claim that the suture did not absorb as intended, and that this defect caused the injury to her nerve. "Summary judgment is not a remedy to be exercised at the court's option; it must be granted when there is no genuine disputed issue over a material fact." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 37], and DENIES the Defendant's Motion to Strike [ECF No. 40]. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on May 30, 2017.

                                            s/ Theresa L. Springmann
                                            CHIEF JUDGE THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT